■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. MI-CHAEL CARR, Appellant, v WALTER J. FLOOD et al., Respon-dents.—In a habeas corpus proceeding, the petitioner appeals from a judgment of the Supreme Court, Nassau County (Levitt, J.), entered May 19, 1987, which, *inter alia,* dismissed the proceeding.

Ordered that the judgment is affirmed, without costs or disbursements.

In 1980, inmates of the Nassau County Correctional Center (hereinafter NCCC) commenced an action in the United States District Court for the Eastern District of New York against, among others, the respondents herein, seeking a declaration that overcrowded conditions in that facility violated their constitutional rights. This action culminated in a consent judgment, approved by District Judge Jacob Mishler in October 1984, whereby the maximum in-house population of the NCCC was set at 710 and the maximum capacity of new dormitory housing was set at 157 *(see, Badgley v Santacroce,* 800 F2d 33, *cert denied* — US —, 107 S Ct 955).

The overcrowded conditions at the NCCC continued, and in December 1986 the respondents herein moved before Judge Mischler for an order modifying the consent judgment to permit the housing of additional inmates at the NCCC. On February 19, 1987, the NCCC was housing the maximum number of inmates permissible under the consent judgment, and the respondents asked the court for a temporary solution pending the determination of their motion. A telephone con-ference among Judge Mischler and counsel for the parties to the Federal court action was held on that date, at the conclu-sion of which the court directed the Sheriff of Nassau County to release two misdemeanants who were convicted of crimes that did not involve violence for every one inmate taken in. This was a stopgap measure until the court could more fully review the motion papers.

Subsequent to the aforesaid telephone conference with Judge Mishler, the Sheriff, in conjunction with the Nassau County Attorney, promulgated interdepartmental guidelines to govern the evaluation of the eligibility of inmates for early release from the NCCC. Those guidelines provided that felons and other inmates convicted of crimes involving violence, the use of weapons, and the possession, use or sale of narcotic drugs were not eligible for early release. On advice of counsel the guidelines were subsequently altered to permit the early release of inmates convicted of driving while intoxicated.

On February 26, 1987, Judge Mishler issued a written decision and order directing that a hearing on the matter be held on April 16, 1987. The decision and order stated, in pertinent part: "Pending determination of the motions before the court, the maximum in-house population of NCCC's care facility is increased to 740. If at any time prior to the court's determination of the motions, the core population reaches 740 inmates, the Sheriff shall direct the Warden of the NCCC to advance the release date of two inmates for each inmate received at the NCCC. Those inmates selected for release shall be those who have the least time to serve to become eligible for release from the NCCC and have not been convicted of a crime involving the use of weapons, or the possession, use or sale of narcotic drugs". (That portion of the decision and order which raised the NCCC's population cap was subsequently vacated by the United States Court of Appeals for the Second Circuit, and the matter was remitted to Judge Mischler because he failed to set forth findings of fact and conclusions of law sufficient to permit adequate appellate review *[see, Barnes v Santacroce,* 815 F2d 888].)

Significantly, the Sheriff's interdepartmental guidelines governing the early release of NCCC prisoners were not altered after the issuance of Judge Mishler's written decision and order.

On March 13, 1987, the petitioner was sentenced to one year in the NCCC, upon his conviction of leaving the scene of a fatal accident without reporting, a felony as defined in Vehicle and Traffic Law § 600 (2) (a). With good behavior time and prior custody he was due to be released on August 13, 1987. On April 5, 1987, the Sheriff's Department, acting under the misconception that the petitioner was a misdemeanant, discharged the petitioner from custody under its early release program.

On April 13, 1987, however, the respondents discovered that

the crime for which the petitioner had been convicted was a felony. The petitioner was then immediately taken back into custody. The petitioner subsequently commenced this habeas corpus proceeding, alleging that the respondents were without authority to reincarcerate him once his release date had been advanced.

A hearing was held before Justice Levitt, at the conclusion of which a judgment was entered dismissing the proceeding and declaring that the petitioner's reincarceration was lawful. The court concluded that since the petitioner's release was the result of a mistake, and since that release was contrary to the policy set by the Sheriff with the aid of the County Attorney, the Sheriff was not divested of jurisdiction to direct the reincarceration of the petitioner pursuant to the original judgment of conviction. The petitioner has appealed from this judgment, and we affirm.

The petitioner's early release was the result of a ministerial error whereby the correction officer in charge of determining eligibility acted under the mistaken belief that the crime of which the petitioner was convicted was not a felony. In fact, the petitioner had been convicted of a felony, and the guidelines promulgated by the Sheriff prohibited the early release of any inmate who had been convicted of a felony. Thus, the petitioner's erroneous early release was unauthorized, and, as such, did not serve to divest the Sheriff of jurisdiction over the petitioner (see, People v Cavelli, 50 NY2d 919). This being so, the Sheriff had the authority to reincarcerate the petitioner, and the habeas corpus proceeding instituted by the petitioner was properly dismissed. Mollen, P. J., Thompson, Bracken and Brown, JJ., concur.